UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

RAUL SANDOVAL,

    *Plaintiff*,

v.                                                                  No. 1:19-cv-01179-LY

CORDELL & CORDELL, P.C.,

    *Defendant*.

**PLAINTIFF'S FIRST AMENDED PETITION AND JURY DEMAND**

TO THE HONORABLE JUDGE OF SAID COURT:

COMES NOW RAUL SANDOVAL (hereinafter referred to as "Plaintiff") complaining of CORDELL & CORDELL, P.C. (hereinafter referred to as "Defendant CORDELL & CORDELL"), and for a cause of action would show this Court and/or Jury the following:

1. Plaintiff is a resident of Travis County, Texas.

2. Defendant CORDELL & CORDELL P.C. is a Missouri Corporation doing business in Travis county, Texas and was served, answered and is proper before the Court.

3. The acts and omissions complained about occurred in Travis County, Texas.

4. The Court has jurisdiction over the parties.

5. Defendant CORDELL & CORDELL, P.C. answered Plaintiff's Original Petition in State District Court and removed the case to Federal Court.

### I. SATISFACTION OF ADMINISTRATIVE REQUIREMENTS

6. On or about December 12th, 2018, Plaintiff timely filed his charge of discrimination and retaliation based on race, color, sex and national origin discrimination with the U.S. Equal

Employment Opportunity Commission ("EEOC"). The charge was filed within 180 days of the act or occurrence.

7. On or about June 20th, 2019, Plaintiff received a Right to Sue letter from the EEOC dated June 14th, 2019.

8. Plaintiff's claims under the Texas Labor Code and Title VII are timely because Plaintiff has filed suit within ninety (90) days of his receipt of the Right to Sue letter from the EEOC dated June 14th, 2019.

9. Plaintiff has filed suit on or before the second anniversary of the date the complaint relating to the action was filed. Plaintiff has complied with and satisfied all administrative requirements for filing this suit.

## II.   RACE, COLOR, SEX AND NATIONAL ORIGIN DISCRIMINATION UNDER STATE AND FEDERAL LAW

10. Plaintiff joined the law firm of Defendant Cordell & Cordell, a national family law firm with more than 100 offices, in January 2012 as an Associate Attorney.

11. At the time of his termination, Plaintiff was employed as a Senior Lead Litigator, which is one step away from becoming a partner with the firm.

12. During his employment with Defendant, Plaintiff received numerous awards and recognitions for his performance at the firm. Plaintiff never received any written reprimands or written disciplines.

13. Throughout his employment with Defendant, Plaintiff strived to be a top earner, so that he would eventually be offered partnership. Indeed, after six successful years as one of the firm's top earners, Plaintiff anticipated he would be offered partnership in the near future.

14. On or about June 13th, 2018, Plaintiff was unexpectedly called into a meeting with two executive managing partners regarding alleged "client issues." The "client issues" concerned the submission of client surveys to Defendant's client care department.

15. According to Defendant, several client surveys had been submitted to the client care department by someone other than the clients. The clients at issue, were allegedly clients Plaintiff represented.

16. Plaintiff was provided with very little information regarding the alleged falsely submitted client surveys. Defendant did not provide the Plaintiff with the names of the clients, nor did Defendant include Plaintiff in the investigation into this matter.

17. Prior to this meeting, Plaintiff had no indication whatsoever that there was ever a concern with client surveys or the client care department. To this day, Defendant has produced zero evidence that Plaintiff participated or committed in the submission of false client surveys.

18. Nevertheless, on July 3rd, 2018 Plaintiff was notified by the head of human resources for Defendant that it would be his last day with the firm. After a long and profitable career with Defendant, Defendant terminated Plaintiff.

19. Without question, Defendant's baseless termination was a pretext to prevent Plaintiff from obtaining partner status, for which he was eligible in the next couple of years per the corporate structure of Defendant.

20. Plaintiff is a dark skinned, Spanish speaking, Hispanic male.

21. During Plaintiff's employment with Defendant, several Caucasian/white female attorneys were offered partnership, despite having less or the same amount of annual recognitions as Plaintiff.

22. For example, approximately 275 attorneys are employed by Defendant. Plaintiff has been named: the firm's top attorney once; the firm's top attorney runner-up once; a top regional performer for three consecutive years; regional runner-up performer twice; and top biller in the firm for two consecutive years. Yet, other white attorneys were promoted within the firm, faster than Plaintiff. Indeed, virtually every firm partner is a white male or white female. There is not a single minority, non-white, partner.

23. Plaintiff would have changed that make-up of the leadership of the firm, so Defendant prevented that from happening by concocting a reason to terminate him.

24. More evidence of the discriminatory treatment of Plaintiff is evidenced by severity of the punishment for the alleged wrongdoing.

25. For example, upon information and belief, a white female partner was only demoted when it was discovered that she was urinating in trash cans within the law firm.

26. Further, upon information and belief, another white male partner remained in his position when several sexual harassment allegations were lodged against him.

27. Nonetheless, Plaintiff, a non-white male, was terminated by Defendant on baseless allegations for which there was no proof or evidence that Plaintiff committed any inappropriate conduct.

28. Moreover, upon information and belief, leadership at Defendant's firm have made discriminatory comments concerning other non-white employees employed by Defendant.

29. Plaintiff was discriminated against, unfairly treated, and wrongfully terminated because Plaintiff is a dark skinned, Spanish speaking, Hispanic male.

30. Defendant has committed unlawful discrimination and/or retaliation against Plaintiff based on race, color, sex, and national origin in violations of Texas Labor Code Sections 21.051, 21.055, and 21.110 (Chapter 21).

31. Further, Plaintiff is an employee within the meaning of Title VII and belongs to a class protected under the law, namely race, color, sex, and national origin. *See 42 U.S.C. §2000e(f)*. Defendant is an employer within the meaning of Title VII and has 15 or more employees for each working day in each of 20 or more calendar weeks in the current or preceding calendar year. *See 42 U.S.C. §2000e(a), (b); Arbaugh v. Y&H Corp., 546 U.S. 500, 504-05 (2006)*.

32. Defendant intentionally discriminated against Plaintiff because of his race, color, sex, and national origin in violation of Title VII. *See 42 U.S.C. §2000e-2*.

33. Defendant is directly liable because it was negligent in remedying the discriminatory conduct. *See Vance v. Ball State Univ., 570 U.S. 421, 427 (2013); McGinest v. GTE Serv. Corp., 360 F.3d 1103, 1119-21 (9th Cir. 2004)*.

34. Defendant is strictly liable for its employees because said employees took a tangible adverse employment action against Plaintiff that significantly changed Plaintiff's employment status. Specifically, Plaintiff was terminated from employment.

### III. HOSTILE WORK ENVIRONMENT

35. Defendant created a hostile work environment through their discriminatory words and actions toward Plaintiff because of Plaintiff's race, color, sex, and national origin.

36. This conduct was so severe that it altered the terms and conditions of Plaintiff's employment and interfered with Plaintiff's work performance/created an intimidating, hostile, and offensive work environment. *See 42 U.S.C. §2000e-2(a)(1); Vance v. Ball State Univ., 570 U.S. 421, 428 (2013)*.

*Raul Sandoval v. Cordell & Cordell, P.C.*  
Plaintiff's First Amended Petition and Jury Demand  
5 | P a g e

### IV.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

37. Defendant acted intentionally or recklessly when engaging in extreme and outrageous behavior causing Plaintiff severe emotional distress.

38. Plaintiff has suffered mental pain and anguish in the past. Plaintiff will continue to suffer mental pain and anguish in the future.

### V.  PLAINTIFF'S DAMAGES

39. As a direct and proximate result of Defendant's conduct, Plaintiff suffered the following injuries and damages:

   a. Plaintiff was discharged form employment with Defendant and incurred substantial debt or expense related to that discharge.

   b. Plaintiff suffered loss of his pension or retirement benefits.

   c. Plaintiff seeks compensation for all lost wages and benefits, including loss of Social Security benefits. Reinstatement of Plaintiff in his previous position is impractical and unworkable. Therefore, Plaintiff seeks an award of front pay and retirement benefits to compensate him up to the retirement age of 65.

   d. Plaintiff suffered mental anguish and emotional distress in the past and in the future.

40. The amount of the Plaintiff's damages is substantial and well in excess of the jurisdictional minimums of this Court.

41. Many elements of damage, including mental anguish in the past and future, and future lost earning capacity, cannot be determined with mathematical precision.

42. Furthermore, the determination of many of these elements of damages is peculiarly within the province of the fact-finder.

43. Plaintiff does not at this time seek any certain amount of damages for any of these particular elements of damage but would instead rely upon the collective wisdom of the fact-finder to determine an amount that would fairly reasonable compensate Plaintiff.

## VI. EXEMPLARY DAMAGES

44. Plaintiff would show that Defendant acted with malice. Specifically, Defendant had the specific intent to cause substantial injury to Plaintiff in violation of Texas Labor Code §21.001, §21.051, §21.055, and §21.110.

45. Defendant's actions in discharging Plaintiff from its employ was in willful disregard of the rights of Plaintiff for which Plaintiff is entitled to recover punitive damages.

46. Further, Plaintiff is entitled to compensatory and punitive damages for unlawful intentional employment practices under Texas Labor Code § 21.2585.

## VII. ATTORNEY'S FEES AND COSTS

47. Plaintiff is entitled to an award of attorney's fees and costs.

## VIII. JURY DEMAND

48. Plaintiff respectfully requests trial by jury of the issues in this case.

## IX. CONCLUSION AND PRAYER

49. WHEREFORE PREMISES CONSIDERED, Plaintiff prays that Defendant be cited to appear and answer, and that on final trial, Plaintiff have judgment against Defendant for all relief requested, for costs, pre-judgment and post judgment interest, and for such other relief, general and special, at law or in equity, to which Plaintiff is entitled.

*– Signature page follows. –*

Respectfully submitted,

**FLORES, TAWNEY & ACOSTA P.C.**


/s/ James D. Tawney
**JAMES D. TAWNEY**
State Bar No.: 24060970
**DAISY CHAPARRO**
TX State Bar No.: 24088824
906 N. Mesa, 2nd Floor
El Paso, Texas 79902
(915)308-1000- Voice
(915)300-0283- Fax
jtawney@ftalawfirm.com
ATTORNEY FOR PLAINTIFF


**CERTIFICATE OF SERVICE**

I hereby certify that on this 5th day of March, 2020, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification to the following as well as all others on the CM/ECF service list:

*Julie C. Tower*
*Patrick S. Richter*
JACKSON LEWIS, P.C.
816 Congress Avenue, Suite 1530
Austin, Texas 78701
Phone: (512) 362-7100
Facsimile: (915) 532-6808
Julie.tower@jacksonlewis.com
Patrick.richter@jacksonlewis.com
*Attorneys for Cordell & Cordell, P.C.*


/s/ James D. Tawney
**JAMES D. TAWNEY**